EVERSHEDS SUTHERLAND (US) LLP
Ian S. Shelton (SBN 264863)
ianshelton@eversheds-sutherland.com
500 Capitol Mall, Suite 1750
Sacramento, CA 95814
Telephone: (916) 844-2965
Facsimile: (916) 241-0501

EVERSHEDS SUTHERLAND (US) LLP
Frank Nolan (*pro hac vice*)
franknolan@eversheds-sutherland.com
1114 6th Avenue
New York, New York 10036
Telephone: (212) 389-5000
Facsimile: (212) 389-5099

EVERSHEDS SUTHERLAND (US) LLP
Michael Bahar (*pro hac vice*)
michaelbahar@eversheds-sutherland.com
700 Sixth Street, NW, Suite 700
Washington, DC 20001-3980
Telephone: (202) 383-0882
Facsimile: (202) 637-3593

EVERSHEDS SUTHERLAND (US) LLP
Jim Silliman (*pro hac vice*)
jimsilliman@eversheds-sutherland.com
1001 Fannin Suite 3700
Houston, Texas 77002
Telephone: (713) 470-6100
Facsimile: (713) 654-1301

*Attorneys for Defendant Noblr Reciprocal Exchange*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL GREENSTEIN, CYNTHIA NELSON, and SINKWAN AU, individually and on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NOBLR RECIPROCAL EXCHANGE,<br><br>Defendant. | CASE NO. 4:21-cv-04537-JSW<br><br>The Honorable Jeffrey S. White<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)**<br><br>Hearing Date:  June 17, 2022<br>Hearing Time: 9:00 a.m.<br><br>Courtroom:    No. 5, 2nd Floor<br>Address:      U.S. Courthouse<br>              1301 Clay Street<br>              Oakland, CA 94612 |

47287918.3

1

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on June 17, 2022, at 9:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled Court, located at Oakland Courthouse, Courtroom 5 – 2nd Floor, 1301 Clay Street, Oakland, CA 94612, Defendant Noblr Reciprocal Exchange ("Noblr") will move this Court to dismiss Plaintiffs' Second Amended Class Action Complaint [Dkt. No. 38] ("Complaint") filed by Plaintiffs Michael Greenstein, Cynthia Nelson, and Sinkwan Au, individually and on behalf of themselves and all other persons similarly situated ("Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b).

This motion is made on the grounds that the Court lacks subject matter jurisdiction under Rule 12(b)(1) and also that Plaintiffs fail to state a viable claim under Rule 12(b)(6). *First*, Noblr seeks dismissal of all claims for lack of Article III standing under Rule 12(b)(1) because Plaintiffs fail to allege an injury-in-fact that is fairly traceable to Noblr's conduct (and not that of the cyber attackers) and which will be redressed by a favorable decision. *Second*, Plaintiffs' Drivers' Privacy Protection Act ("DPPA") claim fails because they do not sufficiently and factually allege that Noblr caused a "disclosure," acted with the requisite intent, or disclosed information for an impermissible purpose under the DPPA. *Third*, the economic loss doctrine precludes Plaintiffs' negligence claim. *Fourth*, Plaintiffs' California Unfair Competition Law ("UCL") claim fails because Plaintiffs have adequate available legal remedies, and also because they do not allege any predicate unlawful, fraudulent, or unfair conduct, or any other cognizable injury. *Finally*, Plaintiffs cannot pursue an independent cause of action for declaratory and injunctive relief, as they attempt under the federal Declaratory Judgment Act ("DJA").

DATED:  April 15, 2021                     EVERSHEDS SUTHERLAND (US) LLP

By */s/ Francis X. Nolan*
         Francis X. Nolan

*Attorney for Noblr Reciprocal Exchange*

# TABLE OF CONTENTS

NOTICE OF MOTION ............................................................................................................. i

TABLE OF CONTENTS ......................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iv

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

FACTUAL ALLEGATIONS ................................................................................................... 2

ARGUMENT ......................................................................................................................... 3

I.      THE COURT LACKS SUBJECT MATTER JURISDICTION. ....................................... 3

    A.      Plaintiffs Still Fail to Plausibly Plead a Concrete Injury-in-Fact. ........................... 4

        1.      Imminent risk of future identity theft and harm. ............................. 4

        2.      Loss of value of PI. ......................................................... 5

        3.      Out-of-pocket monitoring costs, lost time, and inchoate harm. ................ 6

    B.      Plaintiffs Fail to Plausibly Plead a Traceable Injury. ............................................ 7

    C.      Plaintiffs Fail to Plausibly Plead Redress By a Favorable Decision. ....................... 8

II.     THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM. ..................... 9

    A.      Plaintiffs' Drivers' Privacy Protection Act Claim. ................................................. 9

        1.      Noblr did not cause a "disclosure" or have the requisite level of intent. ...... 9

        2.      Noblr did not disclose information for an impermissible purpose. ........... 11

    B.      Plaintiffs' Negligence Claim. ............................................................................. 11

        1.      The economic loss doctrine precludes recovery for economic damages. ... 11

        2.      Plaintiffs fail to allege viable non-economic damages claims. .............. 12

        3.      Plaintiffs otherwise fail to allege cognizable damages. ...................... 13

            a.      Loss of Value of PI ........................................................... 13

            b.      Risk of Future Identity Theft and Harm ................................... 13

            c.      Out-of-Pocket Monitoring Costs and Lost Time ......................... 14

    C.      Plaintiffs' Unfair Competition Law Claim. .......................................................... 14

        1.      No lack of an adequate remedy. ............................................14

MOTION TO DISMISS

1

2        2.      Plaintiffs rely on the same factual predicate as their other claims………... 15

3    D.      The Court Should Dismiss the Declaratory and Injunctive Relief Claim. ............... 15

4 CONCLUSION…………………………………………………………………………………15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS
47287918.3

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re Adobe Sys., Inc. Priv. Litig.*,
5
    66 F. Supp. 3d 1197 (N.D. Cal. Sept. 4, 2014) ..................................................... 5, 8

6

*Agans v. Uber Technologies, Inc.*,
    No. 2:18-cv-02970-PSG-GJSx, (C.D. Cal. August 19, 2019) ......................................4, 5, 6, 7
7

*Ajetunmobi v. Clario Mortg. Cap., Inc.*,
8
    595 F. App'x 680 (9th Cir. 2014) ....................................................................... 15

9

*Allen v. City of Beverly Hills*,
    911 F.2d 367 (9th Cir. 1990) ........................................................................... 4, 9
10

11

*Allen v. Vertafore, Inc.*,
    No. 4:20-cv-04139, 2021 WL 3148870 (S.D. Tex. June 14, 2021), *aff'd*, 2022
12
    WL 765001 (5th Cir. Mar. 11, 2022, No. 21-20404) ......................................................10, 11

13

*Antman v. Uber Techs., Inc. (Antman I)*,
    No. 3:15-cv-01175-LB, 2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) ..................................... 5
14

15

*Antman v. Uber Techs., Inc. (Antman II)*,
    No. 15-CV-01175-LB, 2018 WL 2151231 (N.D. Cal. May 10, 2018) ..............................5, 7, 8

16

*Ass'n of Pub. Agency Customers v. Bonneville Power Admin.*,
17
    733 F.3d 939 (9th Cir. 2013) ............................................................................. 7

18

*Barnum Timber Co. v. Envtl. Prot. Agency*,
    633 F.3d 894 (9th Cir. 2011) ............................................................................. 3
19

20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 9

21

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
22
    598 F.3d 1115 (9th Cir. 2010) ........................................................................... 3

23

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ....................................................................................... 8
24

*Clapper v. Amnesty Int'l USA*,
25
    568 U.S. 398 (2013) ...................................................................................... 4

26

*Clark v. Am. Honda Motor Co.*,
    No. CV 20-03147 AB, 2021 WL 1186338 (C.D. Cal. Mar. 25, 2021) ................................... 15
27

28

*Corona v. Sony Pictures Ent., Inc.*,
    No. 14-cv-09600-RGK, 2015 WL 3916744 (C.D. Cal. June 15, 2015) .................................. 14

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
    No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428 (S.D. Cal. 2016)....................................... 8

*Enslin v. The Coca-Cola Co.*,
    136 F. Supp. 3d 654 (E.D. Pa. 2015), *aff'd sub nom.*, 739 F. App'x 91 (3d Cir.
    2018) ............................................................................................................................... 10

*In re Facebook, Inc., Consumer Priv. User Profile Litig. (In re Facebook)*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................................... 6

*Fonseca v. Goya Foods, Inc.*,
    No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016)................................. 15

*Gardiner v. Walmart Inc.*,
    No. 4:20-cv-04618-JSW, 2021 U.S. Dist. LEXIS 211251 (N.D. Cal. July 28,
    2021) (White, J.) ............................................................................................................... 11

*Gardiner v. Walmart Inc.*,
    No. 4:20-cv-04618-JSW, 2021 WL 2520103 (N.D. Cal. March 5, 2021) (White,
    J.)...................................................................................................................... 11, 12, 13, 14

*Greenstein v. Noblr Reciprocal Exch.*,
    No. 21-cv-04537-JSW, 2022 WL 472183 (N.D. Cal. Feb. 14, 2022) ............. 4, 5, 6, 7, 8, 9, 15

*Gulsvig v. Mille Lacs Cnty.*,
    No. 13-1309, 2014 WL 1285785 (D. Minn. 2014) .................................................................. 9

*Howard v. Criminal Info. Servs.*,
    654 F.3d 887 (9th Cir. 2011) ................................................................................................. 9

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................................ 12

*Krottner v. Starbucks Corp.*,
    628 F.3d 1139 (9th Cir. 2010) ............................................................................................... 5

*Lazy Y Ranch LTD v. Behrens*,
    546 F.3d 580 (9th Cir. 2008) ................................................................................................. 9

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................................ 12

*In re Macbook Keyboard Litig.*,
    No. 5:18-cv-02813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) ................................ 14

-v-

MOTION TO DISMISS

*Madrigal v. Hint, Inc.*,
  No. CV 17-02095-VAP, 2017 U.S. Dist. LEXIS 221801 (C.D. Cal. Dec. 14,
  2017) ............................................................................................................................ 15

*Magadia v. Wal-Mart Assocs.*,
  999 F.3d 668 (9th Cir. 2021) ..................................................................................... 4

*Price v. Starbucks Corp.*,
  192 Cal. App. 4th 1136 (2011) ................................................................................... 8

*Pruchnicki v. Envision Healthcare Corp.*,
  845 F. App'x 613 (9th Cir. 2021) ............................................................................. 13

*Ray v. Anoka Cnty.*,
  24 F. Supp. 3d 843 (D. Minn. 2014) .......................................................................... 9

*Razuki v. Caliber Home Loans, Inc.*,
  No. 17-CV-1718-LAB (WVG), 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) .............6, 8, 13

*Remijas v. Neiman Marcus Grp., LLC*,
  794 F.3d 688 (7th Cir. 2015) ..................................................................................... 8

*Senne v. Vill. Of Palatine*,
  695 F. 3d 597 (7th Cir. 2012) ................................................................................... 10

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ................................................................................... 14

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014) ...................................................................12, 13

*Spokeo v. Robins*,
  578 U.S. 330 (2016) .................................................................................................... 4

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ...................................................................................................... 9

*Svenson v. Google Inc.*,
  No. 13-cv-04080-BLF, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) .............................. 6, 13

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ............................................................................................... 3

*Travis v. Assured Imaging LLC*,
  No. CV-20-00390-TUC-JCH, 2021 WL 1862446 (D. Ariz. May 10, 2021) ........................ 7

*Washington Env't. Council v. Bellon*,
  732 F.3d 1131 (9th Cir. 2013) .................................................................................... 7

-vi-

47287918.3

*Welch v. Theodorides-Bustle,*
    677 F. Supp. 2d 1283 (N.D. Fla. 2010) ................................................................. 10

*In re Zappos.com, Inc.,*
    108 F. Supp. 3d 949 (D. Nev. 2015), *rev'd on other grounds*, *In re Zappos.com,*
    *Inc.*, 888 F.3d 1020 (9th Cir. 2018) ...............................................................4, 5, 6

**Statutes**

18 U.S.C.A. § 2724(a).................................................................................................. 9, 11

28 U.S.C. § 2201........................................................................................................... 15

Article III of the U.S. Constitution ......................................................... 1, 3, 4, 5, 7, 9

**Rules**

California Civil Code § 1798 ........................................................................................ 15

California Unfair Competition Law ............................................................................... 2

FED. R. CIV. P. 8(a)(2)..................................................................................................... 9

FED. R. CIV. P. 12(b)(1)............................................................................................... 3, 4

FED. R. CIV. P. 12(b)(6)............................................................................................... 4, 9

**Other Authorities**

Declaratory Judgment Act............................................................................................ 15

Gramm-Leach-Bliley Act........................................................................... 1, 9, 10, 11, 15

Drivers' Privacy Protection Act ................................................................................. 1, 9

Unfair Competition Law .............................................................................................. 14

MOTION TO DISMISS

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

In its Order [Dkt. No. 37] dismissing Plaintiffs' Corrected First Amended Complaint ("FAC") [Dkt. No. 16], this Court found that Plaintiffs failed to plausibly plead any element of the "irreducible constitutional minimum" to confer Article III standing. In their Second Amended Class Action Complaint ("Complaint") [Dkt. No. 38], Plaintiffs allege no new facts that would alter the Court's findings. *See* Dkt. No. 38-1 ("Amendments"). For example:

- <u>No Imminent Risk of Harm</u>: Plaintiffs still only plead that names, addresses, and driver's license numbers ("DLNs") were possibly stolen during the cyberattack.

- <u>No Lost Value</u>: Plaintiffs still do not plead that: (a) their personal information ("PI") lost value; (b) they had a market for and plans to sell their PI; (c) they were impaired from participating in that market; and (d) they suffered tangible, monetary, or property loss.

- <u>No Mitigation Costs</u>: Plaintiffs offer no new facts as to how Plaintiffs Greenberg and Nelson incurred mitigation costs. The Amendments only generally allege that Plaintiff Au was unable to sign into her my.ny.gov account and that, in March 2022, the darknet had a driver's license and student ID available for sale with her "unusual" name.

- <u>Not Traceable</u>: Plaintiffs assert that their injuries were the result of the subject breach because they were not given notice of any other data breach. Yet they acknowledge that, "[i]n most cases, stolen data is rarely attributed to the source when it is sold" and the processing of stolen data "mak[es] attribution to the source very difficult."

- <u>Not Redressable</u>: Plaintiffs do not plead any new facts on this issue.

In dismissing the FAC, the Court made clear what facts Plaintiffs must plead to satisfy Article III standing. Yet Plaintiffs do not rectify their prior pleading deficiencies. Instead, they use their Amendments to disagree with the Court's reasoning. For example, Plaintiffs now assert that DLNs are more valuable than social security numbers, and that speculative causation is sufficient. The Court should dismiss the new Complaint for the same reasons it dismissed the FAC.

Even if Plaintiffs had standing, their Complaint fails to state any claim for relief. *First*, the Drivers' Privacy Protection Act ("DPPA") claim (Count 1) fails because Plaintiffs do not plead that Noblr caused a "disclosure" under the DPPA, or disclosed the information knowingly or for

an impermissible purpose. *Second*, Plaintiffs' negligence claim (Count 2) fails under the economic loss doctrine as Plaintiffs' scant references to non-economic damages are too speculative and generalized to support a negligence claim and they do not adequately plead an exception to this rule. *Third*, Plaintiffs' California Unfair Competition Law ("UCL") (Count 3) claim fails because there are other adequate legal remedies available and monetary damages would provide adequate relief for the purported injuries. Plaintiffs also improperly bring legal and equitable claims based on the same factual predicates, and, separately, fail to set forth any other cognizable injury. *Fourth*, Plaintiffs fail to establish they are entitled to declaratory and injunctive relief (Count 4), which are remedies and not independent causes of action.

## FACTUAL ALLEGATIONS

The factual allegations in the Complaint are not materially different than those in the FAC. Noblr is an insurance reciprocal exchange that maintains a public-facing instant quote feature to provide tailored insurance quotes. *See* Compl. ¶ 25. This feature works by ingesting an individual's information via Noblr's webform and using it to get additional information, including DLNs, from an outside service provider. *Id.*

On January 21, 2021, Noblr's web team noticed unusual quote activity consisting of a spike in unfinished quotes through its instant quote webpage. *Id.* Noblr immediately launched an internal investigation that revealed that attackers may have initiated quotes using information they already possessed (i.e., names and dates of birth) to obtain DLNs inadvertently included in the page source code. *Id.* On January 25, 2021, Noblr's security team began blocking suspicious IP addresses. *Id.* On January 27, 2021, when Noblr determined that the attackers were able to access DLNs, Noblr altered its instant quote system to prevent further access by the attackers and took other steps to combat these attacks. *Id.*

Noblr invested time and money to remedy the situation, including blocking suspicious IP addresses, revising rate limit thresholds to adjust traffic patterns, and altering the instant quote system to mask DLNs in the source code and in the final application page. *Id.* Noblr developed and employed changes to processes and protocols to prevent this type of event from happening again. *Id.* Noblr communicated the chain of events to Plaintiffs in Notice Letters distributed in

May 2021 ("Notice Letters"). In the Notice Letters, Noblr also explained that Plaintiffs' names, DLNs, and addresses may have been accessed. *Id.* Noblr explained that it takes its responsibility to safeguard PI seriously, and offered one-year complimentary access to Experian's IdentityWorks. *Id.* ¶ 25. Plaintiffs do not allege that they accepted Noblr's offer.

Three Plaintiffs, California residents none, unharmed all, filed a putative class action after receiving Notice Letters. Plaintiff Greenstein (New Jersey) does not allege that his information was misused following the breach. *See* Compl. ¶¶ 79 – 83. He purportedly researched mitigation options in response to receiving a Notice Letter. *Id.* ¶ 80. Plaintiff Nelson (Massachusetts) alleges that he notified his financial advisors, contacted the police, and researched mitigation options, also despite no misuse of his information following the breach. *Id.* ¶¶ 85 – 87. Plaintiff Au (New York) alleges that her information was used to make a fraudulent application for unemployment benefits. She does not allege that the fraudulent application caused her (as opposed to a governmental agency) any actual harm. *Id.* ¶¶ 91 – 94. She now alleges she was prevented from "conducting ordinary business" as she was unable to sign into her my.ny.gov account and that, in March 2022, the darknet had a driver's license and student ID available for sale with her "unusual" name. *Id.* ¶¶ 93 and 97. Plaintiff Au purchased a family plan credit monitoring program. *Id.* ¶ 94. Plaintiffs admit that, "stolen data is rarely attributed to the source when it is sold" and the processing of stolen data "mak[es] attribution to the source very difficult." *Id.* ¶ 96.

## **ARGUMENT**

## I. THE COURT LACKS SUBJECT MATTER JURISDICTION.

A court lacks subject matter jurisdiction over a matter if a plaintiff does not have standing under Article III of the U.S. Constitution. *See* FED. R. CIV. P. 12(b)(1); *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2197 (2021). Once a party has moved to dismiss under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010). This requires the non-movant demonstrate through allegations of "specific facts plausibly explaining" why the standing requirements are met. *Barnum Timber Co. v. EPA,* 633 F.3d 894, 899 (9th Cir. 2011). This includes pleading that a plaintiff has suffered a cognizable injury sufficient to satisfy the "case or

controversy" requirement of Article III. *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 423 (2013). To meet the irreducible constitutional minimum for standing, a plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct, and (3) will be redressed by a favorable decision. *Spokeo v. Robins*, 578 U.S. 330, 338 (2016). In a class action, the named plaintiff "must allege and show that [h]e personally ha[s] been injured, not that injury has been suffered by other, unidentified numbers of the class." *Agans v. Uber Technologies, Inc.*, No. 2:18-cv-02970-PSG-GJSx, ECF 72, pp. 1-2 (C.D. Cal. August 19, 2019) (citation omitted). If the named plaintiff cannot establish the requisite case or controversy, "none may seek relief on behalf of himself or any other members of the class." *Id.* Where, as here, a plaintiff has previously amended a complaint, a district court has broad discretion to deny further leave to amend. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (applies to Rule 12(b)(1) & (6) analyses).

### A.    Plaintiffs Still Fail to Plausibly Plead a Concrete Injury-in-Fact.

Plaintiffs must allege they suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Magadia v. Wal-Mart Assocs.*, 999 F.3d 668, 674 (9th Cir. 2021). Plaintiffs do not allege an injury-in-fact because their allegations of harm are general, conclusory, implausible, and nearly non-existent.

### 1.    Imminent risk of future identity theft and harm.

For Plaintiffs to recover for a threatened future injury, they must do more than allege that a future injury is *possible*, which they cannot do. They must instead allege the threatened injury is "certainly impending." *In re Zappos.com, Inc. (Zappos)*, 888 F.3d 1020, 1026 (9th Cir. 2018) (quoting *Clapper*, 568 U.S. at 409). In dismissing the FAC, the Court correctly held that, "[b]ecause the exposed PI was limited only to Plaintiffs' names, address, and [DLNs], … Plaintiffs did not sufficiently alleged the credible threat of future identity theft needed to plead injury in fact." *Greenstein v. Noblr Reciprocal Exch.*, No. 21-cv-04537-JSW, 2022 WL 472183, at *15 (N.D. Cal. Feb. 14, 2022). "[T]he injury-in-fact requirement will be satisfied when highly sensitive personal data, such as social security numbers and credit card numbers, are inappropriately revealed to the public and increase the risk of immediate future harm to the plaintiff." *Id.* at *10. "Conversely, [DLNs] do not provide hackers with a clear ability to commit

-4-

MOTION TO DISMISS

fraud and are considered not as sensitive as social security numbers." *Id.* (citing *Antman v. Uber Techs., Inc. (Antman II)*, No. 15-CV-01175-LB, 2018 WL 2151231, at \*10 (N.D. Cal. May 10, 2018)). Indeed, DLNs are simply not the kind of data – like Social Security numbers, credit card information, or tax identification numbers – that typically support successful breach class actions. *See id.* at \*6-8; *In re Zappos*, 888 F.3d at 1026; *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010); *Antman v. Uber Techs., Inc. (Antman I)*, No. 3:15-cv-01175-LB, 2015 WL 6123054, \*29 (N.D. Cal. Oct. 19, 2015); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1214 (N.D. Cal. Sept. 4, 2014); *Agans*, No. 2:18-cv-02970-PSG-GJS, ECF 72, at pp. 2, 6. Plaintiffs do not alter their allegations of what data was stolen, i.e., DLNs. *See* Compl. ¶¶ 28, 82, 88, 98, 106.

As did the FAC, the Complaint fails to explain how Plaintiffs face a credible risk of immediate harm. There have been no attempts to defraud, steal from, or otherwise harm Plaintiffs following the cyberattack, and it is not plausible based on what was stolen that such attempts are imminent. Plaintiffs Greenstein and Nelson still do not identify a single instance where their PI was used for nefarious purposes or otherwise. Plaintiff Au continues to fail to allege actual or imminent harm that she suffered arising from the application for unemployment benefits, her inability to log into her my.ny.gov account, or by discovering the presence of identification cards on the darknet with her "unique" name. The Court would have to hypothesize possibilities of future harm to find that Plaintiffs face a risk of imminent identity theft based on the limited amount of PI at issue here.

### 2.    Loss of value of PI.

This Court's prior holding that the allegations of diminished value of PI were insufficient to establish injury under Article III should still stand, because Plaintiffs still do not plead that: (a) their PI became less valuable after the cyberattack, (b) they had a market for and plans to sell that PI, (c) they were impaired by the cyberattack from participating in that market; and (d) they suffered tangible, monetary, or property loss. *Greenstein*, 2022 WL 472183, at \*16-17.

Plaintiffs generally allege diminution of their PI value and that their PI has value on the black market. *See* Compl. ¶¶ 82, 88, 98. But, Plaintiffs still do not allege *how* their PI became less

valuable following the theft. *See In re Zappos.com, Inc.,* 108 F. Supp. 3d 949, 954 (D. Nev. 2015), *rev'd on other grounds*, *In re Zappos, Inc.*, 888 F.3d 1020 (9th Cir. 2018). As the Court explained, Plaintiffs cannot rely on a loss of privacy to demonstrate diminution in value. *See Greenstein*, 2022 WL 472183, at *16 (citing *Svenson v. Google Inc.*, No. 13-cv-04080-BLF, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016), and *Razuki v. Caliber Home Loans, Inc.*, No. 17-CV-1718-LAB (WVG), 2018 WL 6018361, at *1 (S.D. Cal. Nov. 15, 2018)).

Next, the Court was clear that, "to successfully demonstrate injury in fact by diminution in value of PI, Plaintiffs must 'establish both the existence of a market for her [PI] and an impairment of her ability to participate in that market.'" *Id.* at *15 (citations omitted). Plaintiffs' amended complaint does not do so. Furthermore, the Court held that "to establish standing, plaintiffs must show that the loss of value is not arbitrary or hypothetical." *Id.* at *15-16 (citing *In re Facebook, Inc., Consumer Priv. User Profile Litig. (In re Facebook)*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019)). Plaintiffs do not meet that threshold. A bare "contention that [a plaintiff] suffered a 'loss of value of [his] private information,'… without any more details, is 'too abstract and speculative to support [A]rticle III standing.'" *Agans*, No. 2:18-cv-02970-PSG-GJS, ECF 72, at p. 7.

### 3.   Out-of-pocket monitoring costs, lost time, and inchoate harm.

The Court also held that Plaintiffs' effort and costs attempting to mitigate harm from the breach were lacking because the nature of the stolen information was not sufficiently sensitive. *Greenstein*, 2022 WL 472183, at *18-19. Plaintiffs offer no novel or more specific facts that would compel a different finding on a renewed motion to dismiss. *See* Compl. ¶ 108 (alleging mitigation costs, i.e., monitoring services, and lost time associated therewith).

As the Court recognized, "mitigation expenses do not qualify as injury; the risk of identity theft must first be real and imminent, and not speculative, before mitigation costs establish injury in fact." *Greenstein*, 2022 WL 472183, at *19 (citation omitted). Plaintiffs must show that the mitigation costs were reasonable and necessary. *Id.* "[I]n the absence of an imminent risk of harm, Plaintiffs cannot manufacture standing through costs incurred in monitoring their credit." *Id.* at *20. Here, the stolen data is not sensitive enough to trigger an imminent threat of future harm.

1  Associated monitoring costs are thus not reasonable or necessary, but instead arise from alleged

2  fears of hypothetical future harm that is not certainly pending. *See supra*, sec. 1.A. Moreover, that

3  an unknown person is selling identification cards using Plaintiff Au's "unusual" name does not

4  mean that was a reasonably certain consequence of Noblr's actions. Finally, Plaintiffs' conclusory

5  allegations of anxiety, emotional distress, and loss of privacy, (*see* Compl. ¶ 149), are insufficient

6  to confer standing. *See Travis v. Assured Imaging LLC*, No. CV-20-00390-TUC-JCH, 2021 WL

7  1862446, at **6, 28 (D. Ariz. May 10, 2021).

8    **B.**  **Plaintiffs Fail to Plausibly Plead a Traceable Injury.**

9    Article III requires "a causal connection between the injury and the conduct complained

10  of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . .

11  . th[e] result [of] the independent action of some third party not before the court.'" *Antman*, 2018

12  WL 2151231, at *23-24 (citations omitted); *see also Washington Env't. Council v. Bellon*, 732

13  F.3d 1131, 1141 (9th Cir. 2013); *Agans*, No. 2:18-cv-02970-PSG-GJS, ECF 72 at p. 8 (finding no

14  traceable injury in breach case involving DLNs).

15    In dismissing the FAC, the Court held that, "[n]ow or in the future, it would be difficult to

16  trace any future identity theft or fraud to Noblr's specific [cyberattack]." *Greenstein*, 2022 WL

17  472183, at *12. In their Complaint, Plaintiffs do not offer any new facts to trace their purported

18  harm, such as it is, to Noblr's conduct. To the contrary, Plaintiffs concede that, "[i]n most cases,

19  stolen data is rarely attributed to the source when it is sold," and that "stolen data is often

20  obfuscated, parsed, and sold in pieces [and] also often combined with other stolen data, further

21  making attribution to the source very difficult." *See* Compl. ¶ 96. Any injuries were the result of

22  the cyber attackers' independent actions. *See Ass'n of Pub. Agency Customers v. Bonneville Power*

23  *Admin.*, 733 F.3d 939, 953 (9th Cir. 2013).

24    Plaintiffs rely on Noblr's purported delay in sending Notice Letters to demonstrate a

25  substantial risk of harm. But the Court already found that allegation insufficient. *Greenstein*, 2022

26  WL 472183, at *20-23 ("Plaintiffs do not trace any harm from Noblr's delayed notification, and

27  cannot show a nexus between the alleged harm flowing from the delayed notification and Noblr's

28  actions."). That holding is consistent with other decisions finding that a mere delay of a breach

notice (here, just a few months) typically does not satisfy the "fairly traceable" requirement. *See, e.g.*, *In re Adobe*, 66 F. Supp. 3d at 1211, 1217-18; *Razuki*, 2018 WL 6018361, at \*2; *Antman II*, 2018 WL 2151231 at \*23 (citing *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 695 (7th Cir. 2015), and *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1143 (2011)).

### C.    Plaintiffs Fail to Plausibly Plead Redress By a Favorable Decision.

The Court already held that injunctive or declaratory relief would not be able to redress any future harm of identity theft or fraud because it could not compel the hackers or Noblr to return the PI to Plaintiffs, and it would not motivate Noblr to change its practices as Noblr already took immediate action to remedy its unintentional disclosure by changing its policies and masking DLNs in the page source code. *Greenstein*, 2022 WL 472183, at \*25. Plaintiffs offer no new or more specific facts that would compel a different holding now.

Plaintiffs must allege an injury that "is likely to be redressed by a favorable decision." *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428, at \*7-8 (S.D. Cal. 2016). Here, Plaintiffs must "allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Greenstein*, 2022 WL 472183, at \*24 (internal citations omitted). Nothing Plaintiffs now plead changes what the Court already ruled: "If none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of [herself] or any other member of the class." *Id.* Plaintiffs do not allege any injury-in-fact Noblr caused. If another person suffered such harm, that person must pursue their own claim.

Moreover, Plaintiffs' request for injunctive relief is inappropriate because they still are not "realistically threatened by a repetition of [their] experience . . . likely redressed by a favorable decision." *Id.* at \*25; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). This Court was clear that an injunction may not be based on a "fear of on-going data breaches," because "an order requiring Defendants to enhance their cybersecurity in the future (or an equivalent declaratory judgment) will not provide any relief for past injuries or injuries incurred in the future because of a data breach that has already occurred." *Id.* at \*25-26. Rather, "the [injunctive] relief

-8-
47287918.3

1  afforded would be mostly 'psychic satisfaction'" that is not an acceptable Article III remedy. *Id.* at

2  \*27 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Relief that does not

3  remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence

4  of the redressability requirement.")).

5  **II.     THE COURT SHOULD DISMISS FOR FAILURE TO STATE A CLAIM.**

6          Should the Court find that one or more Plaintiffs satisfies the Article III standing

7  requirement, it should still dismiss the Complaint pursuant to Rule 12(b)(6). The Court's "inquiry

8  is limited to the allegations in the complaint." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588

9  (9th Cir. 2008). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation

10 to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions,

11 and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

12 *Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs must not merely allege conceivable conduct, but

13 they must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at

14 570. Where, as here, a plaintiff has previously amended a complaint, a district court has broad

15 discretion to deny further leave to amend. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th

16 Cir. 1990) (internal quotations and citation omitted).

17         **A.     Plaintiffs' Drivers' Privacy Protection Act Claim.**

18         To plead a successful DPPA claim, Plaintiffs must allege that Noblr (1) knowingly (2)

19 obtained, disclosed, or used PI, (3) from a motor vehicle record, (4) for a purpose not permitted.

20 *See* 18 U.S.C.A. § 2724(a); *Howard v. Criminal Info. Servs.*, 654 F.3d 887, 890-91 (9th Cir.

21 2011). At minimum, Plaintiffs still do not plausibly allege that Noblr caused a "disclosure" under

22 the DPPA, that Noblr acted knowingly, or that Noblr disclosed for an improper purpose.

23         **1.     Noblr did not cause a "disclosure" or have the requisite level of intent.**

24         A precondition to DPPA liability is the defendant's knowing and voluntary disclosure of

25 driving information. *See* 18 U.S.C.A. § 2724(a). Courts in similar situations have held that

26 negligent disclosure is insufficient. *See, e.g., Gulsvig v. Mille Lacs Cnty.*, No. 13-1309 (JRT/LIB),

27 2014 WL 1285785, at \*19 (D. Minn. 2014) ("nothing in the [DPPA] suggests that [it] imposes a

28 reasonable duty of care to safeguard information"); *Ray v. Anoka Cnty.*, 24 F. Supp. 3d 843, 848

(D. Minn. 2014) ("the DPPA does not permit suit for negligent disclosure").

The plaintiffs in *Vertafore* alleged their DLNs were accessed "in response to the commands of unauthorized individuals" from unsecured external storage "consistent with the [way the storage was] programmed and configured by Vertafore." *See Allen v. Vertafore, Inc.*, No. 4:20-cv-04139, 2021 WL 3148870, \*\*2, 9 (S.D. Tex. June 14, 2021), *aff'd*, 2022 WL 765001 (5th Cir. Mar. 11, 2022, No. 21-20404). In dismissing the DPPA claim, the court held that, "anyone that may have obtained the data did so in an unauthorized manner, which undercuts the notion that Vertafore knowingly disclosed the data." *Id.* The court pointed to the defendant's press release that explained the data was "inadvertently stored" in unsecured storage and described remedial efforts. *Id.* at \*10. In March 2022, the Fifth Circuit affirmed on the additional basis that the plaintiffs had not alleged a "disclosure" under the DPPA. *See id.* at 2022 WL 765001, at \*1. "Nothing about the words 'unsecured' or 'external' implies exposure to public view, and the mere fact that unauthorized users managed to access the information does not imply that Vertafore granted or facilitated that access." *Id.* at \*7-8.

The plaintiffs in *Enslin* alleged their PI was compromised after a former employee stole company laptops containing DLNs. *See Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 658 (E.D. Pa. 2015), *aff'd sub nom.*, 739 F. App'x 91 (3d Cir. 2018). That court dismissed the DPPA claim, finding the employer did not knowingly or voluntarily disclose the PI by storing it on the laptops. *Id.* at 671. Rather, it was a thief who acted knowingly. *Id.* "[P]rivately holding [PI], even in an unsecured manner, does not constitute a 'voluntary disclosure' under the DPPA." *Id.*

Here, Noblr did not knowingly or voluntarily disclose any data or cause a disclosure. Noblr's webpage was merely the tool that attackers used to perpetrate their scheme. Plaintiffs still do not challenge that assessment, which was communicated in the Notice Letters. *See* Compl. ¶¶ 4, 25 ("The initial investigation revealed that attackers may have initiated these quotes in order to steal [DLNs] which were *inadvertently included in the page source code*.") (emphasis added). Moreover, the website's source code is hardly a publicly facing database, like *Welch v. Theodorides-Bustle*, 677 F. Supp. 2d 1283, 1286 (N.D. Fla. 2010), or a publicly posted ticket, as in *Senne v. Vill. Of Palatine*, 695 F. 3d 597, 600 (7th Cir. 2012). *See* Compl. ¶¶ 20 – 22, 27, 72 – 78,

133, 140, 146. In sum, hackers manipulated Noblr's system using PI previously acquired to access the source code and obtain DLNs. Those allegations cannot give rise to a DPPA claim.

**2.      Noblr did not disclose information for an impermissible purpose.**

Another precondition to DPPA liability is that the defendant obtained, disclosed, or used a person's driving information for an impermissible purpose. *See* 18 U.S.C.A. § 2724(a). Courts have dismissed DPPA claims against insurance companies where the plaintiffs' PI was used for the purpose of facilitating customer access to insurance. For example, the *Vertafore* court found no basis for finding improper purpose within the plaintiffs' allegations that an insurance software company stored data within unsecured external storage accessed without authorization. *See Vertafore*, 2021 WL 3148870, at *9-10. That court reasoned that the plaintiffs, "clearly detail that '[the defendant] is an insurance software company that provides enterprise software solutions' for the insurance industry [and thus the defendant's] purpose of managing the affected data files is a covered permissible use." *Id.* Here, Plaintiffs still do not and cannot show that Noblr obtained, disclosed, or otherwise used their personal data for any improper purpose. Noblr is an insurance company that processes and stores personal data entered into its website and also retrieves additional information from third-party providers in order to provide insurance quotes. Again, Plaintiffs' alleged impermissible disclosure relates to third-party cyber attackers, not Noblr.

**B.      Plaintiffs' Negligence Claim.**

Plaintiffs fail to allege an exception to the economic loss doctrine and do not allege viable non-economic damages. As a result, their negligence claim should be dismissed.[1]

**1.      The economic loss doctrine precludes recovery for economic damages.**

This Court has relied on the economic loss doctrine in dismissing negligence claims in similar cases. *See Gardiner v. Walmart Inc.*, No. 4:20-cv-04618-JSW, 2021 U.S. Dist. LEXIS 211251, *24 (N.D. Cal. July 28, 2021) (dismissing amended complaint) (White, J.); *Gardiner v. Walmart Inc.*, No. 4:20-cv-04618-JSW, 2021 WL 2520103, *23 (N.D. Cal. March 5, 2021) (dismissing original complaint) (White, J.). The doctrine holds that, "[i]n the absence of (1)

---

[1] In the event this litigation proceeds to class certification, Noblr does not concede that California law applies to Plaintiffs.

personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule, recovery of purely economic loss is foreclosed." *See Gardiner*, 2021 WL 2520103, at *23 (citing *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 967 (S.D. Cal. 2014)).

The Court should dismiss Plaintiffs' negligence claim for the same reasons. Plaintiffs do not allege personal injury or physical property damage. Plaintiffs concede that they did not enjoy a special relationship with Noblr. *See* Compl.  ¶ 26 ("The Notice confirms that Plaintiffs became victims … even though they did not have a prior relationship with Noblr," advising "you may be affected even if you have no relationship with Noblr."); *see also id.* ¶¶ 8 – 10 (Plaintiffs "never sought a quote for insurance of any sort from Defendant"). Nor do Plaintiffs allege that any specific benefit was intended for them relative to other individuals. Plaintiffs also acknowledge that seven of the eight types of alleged harm are economic. *Id.*  ¶¶ 109 and 149. These include the same or similar damages allegations within the negligence claim associated with the use, theft, and publication of PI (¶ 108.a. and ¶ 149 (i) and (ii)); out-of-pocket expenses for prevention, detection, and recovery (¶ 108.b. and ¶ 149 (iii) and (v)); lost opportunity, loss of productivity, and mitigation efforts (¶ 108.c. and ¶ 149 (iv)); continued risk to the PI (¶ 108.d. and ¶ 149 (vii)); and future costs in terms of time, effort, and money at ¶ 108.e. and ¶ 149 (viii).

### 2.     Plaintiffs fail to allege viable non-economic damages claims.

At best, Plaintiffs' non-economic harm allegations amount to: "an undeniable interest in ensuring that their [PI] is secure, remains secure, and is not subject to further misappropriation or theft," and "anxiety, emotional distress, loss of privacy, and other economic and non-economic losses." *Id.*  ¶¶ 109 and 149 (vi). California courts have found in data breach cases involving lost PI that an "appreciable, nonspeculative, present harm is an essential element of a negligence cause of action," and a breach causing only speculative harm or the threat of future harm does not normally suffice. *In re Sony Gaming,* 903 F. Supp. 2d at 962-63; *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012) (holding that "increased, unexpected, and unreasonable risk to the security of sensitive" PI was "too speculative to support a claim for negligence"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012) (dismissing a

negligence claim where plaintiffs failed to allege an "appreciable, nonspeculative, present injury").

The same is true here. At minimum, the New Jersey and Massachusetts Plaintiffs do not factually allege that their PI accessed via Noblr's website has been misused, or otherwise show they suffered some form of appreciable, nonspeculative, present injury. The alleged future harm (supporting their mitigation efforts and injunctive relief) remains vague at best.

**3.    Plaintiffs otherwise fail to allege cognizable damages.**

*a.    Loss of Value of PI*

To sufficiently allege diminution of value of PI, Plaintiffs must plead the existence of a market for the PI, and that they have been deprived of the ability to participate in that market. *See Svenson*, 2016 WL 8943301, at *9. General diminution allegations are insufficient. *See Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021) ("mere misappropriation of [PI] does not establish compensable damages") (citation omitted). Citations to studies explaining how PI may have value are not enough if the pleadings do not allege how the specific plaintiff's PI actually lost value. *Id.* at 614-15. This is particularly true in the context of data breach class actions. *See Razuki,* 2018 WL 6018361, at *5. Plaintiffs generally refer to the Notice Letters' statement that their DLNs and addresses "*may* have been accessed" in support of their contention that they have suffered "damages to and diminution in the value of [their] PI." *See* Compl. ¶¶ 79, 82, 84, 88, 90, 98 (emphasis added). That is not enough to sustain their claim.

*b.    Risk of Future Identity Theft and Harm.*

"[C]onclusory allegations of an increased risk of identity theft are insufficient to establish injury as required for [...] negligence, contract, and UCL claims." *See Gardiner*, 2021 WL 2520103, at *12 (finding plaintiff only vaguely alleges an increased risk but does not offer specific facts regarding the PI stolen, any misuse that occurred, and how the allegations amount to more than a nonspeculative injury). "[W]ithout specific factual statements that Plaintiffs' [PI] has been misused, in the form of an open bank account, or un-reimbursed charges, the mere 'danger of future harm, unaccompanied by present damage, will not support a negligence action.'" *See In re Sony Gaming*, 903 F. Supp. 2d at 963.

Plaintiffs' allegations refer generally to the Notice Letters stating their DLNs and addresses

-13-

"*may* have been accessed," and that they therefore face an "imminent and impending injury arising from the increased risk of fraud and identity theft." *See* Compl. ¶¶ 79, 82, 84, 88, 90, 98 (emphasis added). The New Jersey and Massachusetts Plaintiffs do not allege specific facts regarding misuse. The New York Plaintiff alleges in conclusory fashion that, "[f]ollowing the Unauthorized Data Disclosure, in January 2021, Plaintiff Au's data was fraudulently used to apply for unemployment benefits." *See* Compl. ¶ 91. She does not allege that the reported fraud was the result of Noblr's disclosure or caused her personal harm. Plaintiff Au concedes a *third-party* used her information to fraudulently apply for benefits *from a government agency*. *Id.*

        *c.*     **Out-of-Pocket Monitoring Costs and Lost Time.**

For credit monitoring (costs and lost time) to be compensable, Plaintiffs must allege that their need for future monitoring is a reasonably certain consequence of Noblr's purported breach of duty, and that the monitoring is reasonable and necessary. *See Corona v. Sony Pictures Ent., Inc.*, No. 14-cv-09600-RGK, 2015 WL 3916744, *4 (C.D. Cal. June 15, 2015) (monitoring costs sufficient where "most sensitive, nonpublic PII, which included Social Security numbers, employment files, bank account information, health and medical information, passport numbers, retirement plan data, and home and email addresses" were posted on file-sharing websites, copied over a million times, and used by hackers to threaten the release of additional PI). In contrast, monitoring costs are not reasonable based on general allegations of potential identity theft. *See Gardiner*, 2021 WL 2520103, *15-16. Disclosed DLNs do not justify such costs or lost time.

**C.**     **Plaintiffs' Unfair Competition Law Claim.**

    **1.**     **No lack of an adequate remedy.**

Plaintiffs must lack another adequate remedy at law to pursue equitable remedies through a UCL claim. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844-45 (9th Cir. 2020). Courts post-*Sonner* have dismissed such where plaintiffs simultaneously seek monetary relief. *See, e.g.*, *In re Macbook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *12 (N.D. Cal. Oct. 13, 2020) (collecting cases). Plaintiffs do not plead that they lack an adequate legal remedy but nonetheless pray for exhaustive injunctive relief. *See* Compl. at Prayer for Relief. Such an order would not provide relief for the alleged injuries, which arise from a temporary condition in

1   Noblr's page source code that Noblr already resolved. *Id.* ¶ 25; *Greenstein*, 2022 WL 472183, at

2   *25 ("[i]njunctive … relief would not be able to redress any future harm… Noblr already took

3   immediate action… masking [DLNs] in the page source code"). Nor would monetary damages

4   provide adequate relief for purported future harms. *See Clark v. Am. Honda Motor Co.*, No. CV

5   20-03147 AB (MRWx), 2021 WL 1186338, at *8 (C.D. Cal. Mar. 25, 2021).

6           **2.**        **Plaintiffs rely on the same factual predicate as their other claims.**

7         Equitable and legal claims based on the same factual predicate may not be asserted in the

8   alternative. *See Madrigal v. Hint, Inc.*, No. CV 17-02095-VAP (JCx), 2017 U.S. Dist. LEXIS

9   221801, at *13 (C.D. Cal. Dec. 14, 2017); *Fonseca v. Goya Foods, Inc.*, No. 16-CV-02559-LHK,

10   2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016). Plaintiffs seek equitable relief on the same

11   predicates of their other claims, and explicitly rely on the DPPA, the Federal Trade Commission

12   Act, the Gramm-Leach-Bliley Act, and California Civil Code § 1798. *See* Compl. ¶¶ 151 – 161.

13   Moreover, as with their negligence claim, Plaintiffs' UCL claim does not arise from an

14   independent cognizable injury. *See, supra*, at sec. II.B. Finally, the California statutes that form

15   the basis for the UCL claim are intended to protect PI "about *California residents*," which

16   Plaintiffs are not. *See* Cal. Civ. Code § 1798.81.5 (emphasis added).

17           **D.**      **The Court Should Dismiss the Declaratory and Injunctive Relief Claim.**

18         Finally, Plaintiffs bring a claim for declaratory and injunctive relief under the federal

19   Declaratory Judgment Act ("DJA"). The DJA provides the Court with discretion to "declare the

20   rights and other legal relations of any interested party seeking such declaration" where there is an

21   "actual controversy." 28 U.S.C. § 2201. This is actually a request for remedy rather than an

22   independent cause of action. *See, e.g., Ajetunmobi v. Clario Mortg. Cap., Inc.*, 595 F. App'x 680,

23   684 (9th Cir. 2014). Plaintiffs do not set forth any specific, factual allegations of harm they will

24   suffer if the Court denies their vague request for injunctive relief. That is fatal to their DJA claim.

25                                       **<u>CONCLUSION</u>**

26         The Court should dismiss the Second Amended Complaint, with prejudice, for lack of

27   subject matter jurisdiction or, in the alternative, for failure to state a viable claim.

28

47287918.3

1   DATED: April 15, 2022                    EVERSHEDS SUTHERLAND (US) LLP

2                                            By */s/ Francis X. Nolan, IV*
                                                 Francis X. Nolan, IV
3

4                                            *Attorneys for Noblr Reciprocal Exchange*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS
47287918.3